IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRISTOPHER ALLEN ANSPACH,          )
                                    )
               Petitioner,           )
                                    )
          v.                         )     1:11CV597
                                    )
OLIVER WASHINGTON,                   )
                                    )
               Respondent.           )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On December 7, 2007, in the Superior Court of Hoke County North Carolina, Petitioner pled guilty to conspiracy to discharge a firearm into occupied property and conspiracy to commit assault with a deadly weapon with intent to kill in case 07CRS002331 (51 & 52) for which he received two consecutive terms of 21 to 26 months of imprisonment, suspended in favor of 36 months of supervised probation. (Docket Entry 4, Ex. 1; see also Docket Entry 1, §§ 1-3, 5, 6.) Petitioner later violated the terms of his probation, resulting, on June 3, 2009, in the revocation of his probation and the activation of his prison sentences. (Docket Entry 4, Ex. 2.)

Petitioner filed nothing concerning his original judgment or the revocation of his probation until August 10, 2010, when he filed a motion for appropriate relief ("MAR") in the Superior Court of Hoke County. (See Docket Entry 1, § 11; see also Docket Entry

4, Ex. 6.)[1]  That court denied Petitioner's MAR by order dated as signed on December 1, 2010, and stamped filed on December 3, 2010. (Docket Entry 4, Ex. 3; see also Docket Entry 1, § 9.)[2]  Petitioner then sought a writ of certiorari from the North Carolina Court of Appeals, which denied relief on February 10, 2011.  (Docket Entry 4, Exs. 4, 5; see also Docket Entry 1, § 11.)[3]

On July 20, 2011, Petitioner executed his instant Petition to this Court (Docket Entry 1 at 14), and the Court stamped it filed on July 26, 2011 (id. at 1).[4]  Respondent has moved for dismissal of the Petition as untimely filed.  (Docket Entry 3.)  Petitioner has responded in opposition.  (Docket Entry 6.)

## Petitioner's Claims

Petitioner raises two potential claims for relief in his Petition: 1) he did not understand the consequences of his guilty

---

[1] Petitioner dated his MAR as signed on July 29, 2010. (Docket Entry 4, Ex. 6 at 7.)  He attached copies of his probation revocation judgments to the MAR.  (Id. Ex. 6 at 9-13.)

[2] The Petition lists the MAR both in the section regarding direct appeal and regarding motions other than a direct appeal.  (Compare Docket Entry 1, § 9, with id. § 11.)  The court's order denying the MAR mistakenly refers to the MAR's filing date as February 3, 2009 (Docket Entry 4, Ex. 3), an impossibility given that the MAR bears a signature date of July 29, 2010, attaches the judgments from Petitioner's probation revocation proceeding on June 3, 2009, and addresses his probation revocation that day, as well as his subsequent arrival in prison (see Docket Entry 4, Ex. 6 at 1-2, 7, 9-13).

[3] The Petition mistakenly lists the date of the Court of Appeal's decision as February 14, 2011.  (Compare Docket Entry 1, § 11, with Docket Entry 4, Ex. 5.)

[4] Page citations to this document refer to the page number placed in the footer of the document upon filing in the Court's CM/ECF system.  The Petition mistakenly states that Petitioner placed it in the prison mail system on June 29, 2011, an impossibility given his dating of the Petition as "[e]xecuted (signed)" on July 20, 2011.  (Docket Entry 1 at 14.)  Moreover, the discussion which follows shows that the difference between June 29, July 20, and July 26, 2011, do not alter the timeliness analysis.

plea because he believed his 21 to 26 month sentences would run concurrently; 2) he received ineffective assistance of counsel because his attorney incorrectly advised him that his sentences would run concurrently. (Docket Entry 1, § 12.)

## **Discussion**

Respondent requests dismissal on the ground that the Petition was filed[5] beyond the one-year limitation period imposed by 28 U.S.C. § 2244(d)(1). In order to assess this argument, the Court first must determine when Petitioner's one-year period to file his § 2254 petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) <u>the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review</u>;

---

[5]"In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 F. App'x 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court need not consider this matter further.

-3-

>    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The record does not reveal any basis for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case.[6] As a result, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction(s) ended.

Two possible dates of finality exist in this case, either of which leads to the same result. Both of Petitioner's claims really go to the validity of his original judgment, rather than the revocation of his probation. The original judgment was entered on

---

[6] In this regard, the undersigned notes that § 2244(d)(1)(D) could not apply because Petitioner's original judgments dated December 7, 2007, expressly stated that the second of his two sentences of 21 to 26 months "shall run at the expiration of" the first such sentence. (Docket Entry 4, Ex. 1.) Accordingly, the factual predicate for Petitioner's instant claims existed for him to uncover through the exercise of due diligence no later than December 7, 2007, a date before any of the dates that might apply under § 2244(d)(1)(A).

-4-

December 7, 2007 and Petitioner filed no direct appeal. If Petitioner had a right to appeal, his time for doing so expired 14 days later. N.C. R. App. P. 4(a). Petitioner's time to file in this Court then began to run and would have expired on or about December 22, 2008. Yet, Petitioner took no action until he filed his MAR in the trial court on August 10, 2010 (which MAR he dated as signed on July 29, 2010), or more than two-and-one-half years after his conviction became final and more than a year and a half after his time to file in this Court had expired. Although attempts at collateral relief in the state courts do toll the running of the limitations period pursuant to § 2244(d)(2), filings made after the limitation period has run do not restart or revive the time to file. <u>Minter v. Beck</u>, 230 F.3d 663, 665 (4th Cir. 2000). Therefore, the Petition was filed well out of time under § 2244(d).

Further, even if the Court assumed that the time for Petitioner to file should run from the date of the judgment revoking his probation and activating his prison sentences, the Petition remains untimely. The revocation judgment was entered on June 3, 2009. Any opportunity for Petitioner to have filed a notice of appeal would have expired on June 17, 2009, and his time to file in this Court would have begun to run on that day and would have expired a year later on June 17, 2010. Petitioner, however, took no action until he filed his MAR on August 10, 2010, (which he dated as signed on July 20, 2010), after his time to file in this Court had already ended.

-5-

In response to Respondent's Motion to Dismiss, Petitioner explicitly states that he does not contest any of the dates set out in Respondent's Motion as discussed above. (Docket Entry 6 at 1.) However, Petitioner then explains that it took more time than "expected to receive important documents that were necessary to argue his motion for appropriate relief," asks the Court to consider the Petition because refusing to consider it would result in a "<u>fundamental miscarriage of justice</u>," and seeks an additional 30 days to file a further response to Respondent's Motion to Dismiss. (<u>Id.</u> at 2-3.)

Petitioner's statement that it took more time than he expected to receive documents to support his MAR could constitute an invocation of the doctrine of equitable tolling, which the Supreme Court has ruled applicable to the one-year limitation period for federal habeas filings, <u>Holland v. Florida</u>, 560 U.S. ___, ___, 130 S. Ct. 2549, 2562 (2010). Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." <u>Id.</u> (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)). However, prison conditions, such as transfers, lockdowns, or misplacement of legal papers, do not normally provide a basis for equitable tolling. <u>See</u> <u>Dodd v. United States</u>, 365 F.3d 1273, 1283 (11th Cir. 2004); <u>Allen v. Johnson</u>, 602 F. Supp. 2d 724, 727-28 (E.D. Va. 2009). Petitioner's claim that he had more difficulty than expected in procuring documents similarly reflects a condition of his

-6-

confinement and an ordinary, not extraordinary, circumstance, which fails to warrant equitable tolling.

Petitioner's reference to a fundamental miscarriage of justice also does not allow the Court to consider his case. That term generally addresses the application of a procedural bar, whereas in this case a time bar applies. Petitioner's statement really amounts to a request that the Court ignore the statute of limitations because his claim has merit, something which controlling authority prohibits. See Rouse v. Lee, 339 F.3d 238, 251-52 (4th Cir. 2003).

Nor does Petitioner's request for an additional 30 days to procure case law in support of a further response warrant any action by the Court. Petitioner should have moved for an extension of time to respond if he believed he had good cause. See Fed. R. Civ. P. 6(b); see also Rule 12, Rules Governing Sect. 2254 Cases in U.S. Dist. Cts. Further, far more than 30 days have now passed since Petitioner filed his response brief and he has submitted no update or amendment. Finally, research has revealed authority that precludes Petitioner's position. No reason exists to further delay disposition of the case. Respondent's Motion to Dismiss should be granted.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 3) be granted, that the Petition (Docket

Entry 1) be denied, and that Judgment be entered dismissing this action.

                              /s/ L. Patrick Auld
                              **L. Patrick Auld**
                         **United States Magistrate Judge**

March 1, 2013

-8-

Case 1:11-cv-00597-TDS-LPA   Document 8   Filed 03/01/13   Page 8 of 8